900 F.2d 250
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Randolph H. CUNNINGHAM, Plaintiff-Appellant,
v.
ASHLAND CHEMICAL COMPANY, A DIVISION OF ASHLAND OIL, INC.;
Fred Brothers, President; Don Coticchia, Executive Vice
President; Rod Parsons, Vice President, Industrial Chemical
Solvents; Roy Beaver, Marketing Manager; Jack Sweet,
Business Manager; Patrick H. Jayne, Regional Manager
(Charlotte, NC); Mike Stogner, Regional Manager (Atlanta,
GA); Phil Workman, District Manager (Charlotte, NC);
Howard Crawley, Marketing Manager; Gregory H. Hill,
Personnel (Charlotte, NC), Defendants-Appellees.
 No. 89-3289.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 5, 1990.
Decided: April 4, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (C/A No. 88-15-R)
 Salle A. Erwin, Orchard Lake, Mich., for appellant.
 William David Paxton, Sr., Gentry, Locke, Rakes & Moore, Roanoke, Va. (Argued), for appellees; S.D. Roberts Moore, Gentry, Locke, Rakes & Moore, Roanoke, Va., on brief.
 W.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 In this appeal an employee, Randolph H. Cunningham, alleges that his employer, Ashland Chemical Company ("Ashland Chemical"), breached his employment contract, as reflected by the employees' manuals or handbooks, by discharging him without just cause. In addition to Ashland Chemical, ten individuals who were Ashland Chemical employees were also named as defendants. On June 19, 1989, the district court granted summary judgment for all defendants, and Cunningham appealed to this court. For the reasons stated below, we affirm the district court.
 
 I.
 
 2
 Cunningham was first employed by Ashland Chemical in May 1972 as a sales representative in Southwestern Virginia. From that time until his termination effective February 4, 1987, he worked out of Ashland Chemical's Roanoke district facilities. For the four years immediately preceding his termination, Cunningham worked as a technical service representative in the hazardous waste division. His responsibilities in this position were to ensure that the districts within Ashland's Southeastern and South Atlantic Regions complied with the requirements of the Resource Conservation and Recovery Act ("RCRA") and to provide technical support to the local sales efforts of the districts.
 
 
 3
 At the times pertinent to this suit, the defendants Phil Workman and Howard Crawley were the district and plant managers, respectively, in Charlotte, North Carolina. One of the districts in Cunningham's area of responsibility was Charlotte. In mid-January 1987, Cunningham conducted a two-day audit of the Charlotte facilities. According to Crawley and Ashland Chemical, during the course of this audit, Cunningham suggested to Crawley that gaps in the facilities' inspection records be filled in and back-dated by Crawley in order to avoid violations of federal law. This action would have been illegal. Cunningham denies that he made this suggestion to Crawley. In fact, in his complaint Cunningham alleges that he has reported numerous violations to Ashland Chemical and implies that he was discharged because of his diligence in reporting these environmental problems.
 
 
 4
 On February 3, 1987, Cunningham's immediate supervisor, John H. Sweet met with Cunningham and presented him with the choice of resigning or being terminated. Cunningham refused to resign, and Sweet advised him that he was recommending that Cunningham be terminated promptly and that he was suspended pending final approval by his superiors. The only reason given to Cunningham for his termination was the report made by Crawley, and Sweet testified that his dismissal was the result of misconduct, not substandard performance.
 
 II.
 
 5
 Summary judgment is proper when there is no genuine issue of any material fact. When the party with the burden of proof "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment for the other party is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). As the Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986), "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." The standard of review is de novo. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir.1987). An essential element of a breach of employment contract action such as this one is a "just cause" provision that would remove the employee from an employment-at-will status.
 
 III.
 
 6
 The law of Virginia applies in this case. "In Virginia, where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." Miller v. SEVAMP, Inc., 234 Va. 462, 465, 362 S.E.2d 915, 917 (1987) (citations omitted). Courts applying Virginia law have not yet recognized any type of "implied covenant of good faith and fair dealing" in employment contracts that can serve as the basis for a wrongful discharge claim. However, the employment at will doctrine is not absolute. If an employer promises that an employee will not be dismissed without cause, thus giving rise to a fixed, intended duration of employment, or where an employment contract is supported by additional consideration, the contract is taken out of the at-will category. Id. at 466, 362 S.E.2d at 917. The primary issue in this case is whether there is any oral promise or employee handbook that would require Ashland to have "just cause" to dismiss Cunningham.
 
 
 7
 As a general rule, "federal courts [in Virginia] have held that terms and policies contained in an employee handbook can become part of a binding contract." Thompson v. Kings Entertainment Co., 653 F.Supp 871, 874 (E.D.Va.1987). In the leading cases supporting this proposition, the employees received an employment handbook. See Seabolt v. Westmoreland Coal Co., 703 F.Supp. 1235, 1241 (W.D.Va.1989); Thompson v. Kings Entertainment Co., 653 F.Supp. at 872; Thompson v. American Motor Inns, Inc., 623 F.Supp. 409, 411 (W.D.Va.1985). If the handbook or manual is to be considered to be part of a binding contract, basic principles of contract law require acceptance of its terms. Such acceptance could only occur upon learning that an offer had been extended--through receipt of the handbook. In the present case, Cunningham never received any handbook or manual that stated that he could only be dismissed for just cause.
 
 
 8
 Cunningham bases his breach of contract claim on three documents, Ashland Chemical's Human Resources Policy Manual ("Manual"), Ashland Chemical's Employee Handbook ("Handbook I"), and its Handbook for Non-union Employees ("Handbook II").* The Manual is a supervisory manual that communicates the company's personnel policies to department heads and other supervisory personnel. There is no evidence in the record that Cunningham ever received a copy of the Manual or any other "employee handbook" for his own personal use or that he believed that the Manual set forth the terms and conditions of his employment with Ashland Chemical. Moreover, the Manual contains a conspicuous disclaimer:
 
 
 9
 THE POLICIES DESCRIBED HEREIN ARE NOT CONDITIONS OF EMPLOYMENT AND THE LANGUAGE IS NOT INTENDED TO CREATE A CONTRACT BETWEEN THE COMPANY AND ITS EMPLOYEE. THE COMPANY RESERVES THE RIGHT ... TO TERMINATE EMPLOYEES AT ANY TIME FOR ANY REASON....
 
 
 10
 (Capital lettering and underlining in original.) Other disclaimers of any contract formation are also found in Instruction G-8 of the Manual setting forth procedures regarding misconduct.
 
 
 11
 Handbook I applies only to employees assigned to the company's Dublin, Ohio headquarters. Cunningham was never assigned to Dublin and never received this Handbook either. Handbook I also contains the same disclaimer as the Manual.
 
 
 12
 The third document relied upon by Cunningham, Handbook II, issued in 1977, does not contain any disclaimer, but it is a very general description of company policies, and the disciplinary procedures are only outlined in general terms. In addition there is no evidence that Cunningham ever received or was even aware of this handbook before this litigation.
 
 
 13
 Without any evidence that Cunningham ever received the manual or handbooks, we cannot hold that they were part of his employment contract. Moreover, even if Cunningham had received either of the first two documents, their disclaimers were sufficient to prevent them from becoming a binding part of his employment contract.
 
 
 14
 Because Crawley was an employee at will, any disputed facts concerning the exchange between Cunningham and Crawley in Charlotte are irrelevant.
 
 
 15
 All other claims of relief included in Cunningham's complaint have been abandoned on appeal and were also without merit.
 
 IV.
 
 16
 For these reasons, we hold that Cunningham was an employee at will and that, therefore, summary judgment for the defendants was proper.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Because consideration of all three of these documents involves basically the same analysis, we hereby grant Cunningham's Motion to Supplement the Record on Appeal to include all relevant portions of the Manual and Handbook II, and hereby deny Ashland Chemical's Motion to Strike